The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention to the Court as now sitting. God save the United States and this Honorable Court. All right, be seated please. All right, we'll call the first case, Amos v. Amazon Logistics, and Mr. Rigsby, we'll hear from you. If it may please the Court, my name is Jesse Rigsby, I'm here with my colleague, Danielle Wilson. We represent the plaintiff's appellants in this appeal. The Court is presented with two distinct main issues. We only have to win one to prevail. The first main issue is this, is the arbitration clause excluded from enforcement under the Federal Arbitration Act and the Washington Uniform Arbitration Act because Ms. Amos was, with respect to the FAA, a transportation worker engaged in interstate commerce and with respect to the WUAA, Amazon's employee. The second issue is, is the arbitration clause and the program agreement in which it's embedded an illusory contract under Washington state law such that the arbitration clause was never formed as a contract. I will concentrate my remarks- Well, that one you can leave behind. That is law school contract law. It seems to me if two promises facing each other are a consideration, and in this case, the idea that if you want to consider continuing as a thing, you have to accept the change. You can argue it if you want, but I'm speaking for myself now, but I think you might as well stick with the other ones. Okay. Well, I appreciate your remarks. Obviously, in the briefing, we make our point about why that may be not the case, but I will respect the- Well, you know, she didn't have to continue on the contract. It said we're modifying, and if you don't like it, you don't continue. If you continue, you agree to it. And that agreement, implied agreement, she had the choice, is the consideration. A promise for a promise is the way contracts are formed. And again, I'm not going to spend time on it if the court doesn't find it useful. I will just say that the exit costs and it wasn't- Well, whether it's exit costs, it's a question of whether there's consideration, not whether it's costly, whether there's a promise for a promise. Again, if the court finds that that's a lost cause, then I won't- Well, I can't go so far as saying it's a lost cause, but I think you'd do better by focusing on the other issues. Well, I will take the court's remarks to heart. And also, I don't speak for the court. I understand, but I was going to concentrate on the first main issue. Yeah, okay. Anyway, as a starting point, there's one overarching question that permeates all the others, and it's this. What is the relationship of the parties? Is this as Amazon urges a true, arm's-length, business-to-business commercial relationship, or is this, as plaintiffs urge, an employee-employer relationship? May I ask you a question about that? A big part of your brief, as I understand it, argues that Ms. Amos is an employee and not an independent contractor under the standard we use under the FLSA, the control standard. And I'm trying to figure out, is that relevant at all to the FAA question, or is that only relevant to your Washington state law question? And thank you for the question, Your Honor. We think that it's relevant to the FAA question in the sense of it gives context and some ability to contextualize what's going on with the creation of a business entity and the interposition of a business entity. But I guess in New Prime, right, the Supreme Court made clear, like, we don't care if it's an independent contractor or an employee. We're past those formalities. We just look at kind of the substance. So I'm just, I don't understand why, after New Prime at least, there's so much emphasis on whether Ms. Amos would qualify as an independent contractor or an employee. Well, and it may be we're swatting a fly with a sledgehammer, honestly, that we think by showing that she's an employee that we very easily make the New Prime showing at that point. And whether it's done under the FLSA. What you say is easy, but didn't New Prime just really involve a situation where the parties agreed that the individual owning the truck was the LLC? In this case, we have an LLC that had 450 employees. And the arrangement was between the LLC and Amazon. So it seems to me to say it doesn't make a difference. You may be able to read through an LLC to a person if it's an individual. But here we have a case where she is a formidable company. She had a lot of drivers. And with respect to, let me start out with respect to the 400. And they had a lot of trucks? Yeah. 450 trucks? Is that right? The 450 drivers, you had a couple hundred trucks. I don't know. And you had a six-acre tract of land covered with a warehouse or something. I don't know. Delivering all over Durham County and elsewhere. This is a big business. I was really interested in this because I've seen those trucks run around. And sometimes they even deliver to us. But I wondered how they did it all. And so I was interested in the background of it. It's amazing. But your lady, your client, who is trying to interpose her rights under this contract that Amazon has with the LLC, is the owner. Right? And a lawyer there. Yes. Very successful business. Well, I wouldn't say that necessarily. But let me address at least the 450 trucks. Or 450 employees. We say 450 employees, but what we don't say is that that was under the term of the entire two-year period in which she was operating. You didn't tell us it was 450. Amazon told us it was 450. You didn't even tell us that there was more than one. With respect, Your Honor, we actually do say 450 employees in the complaint. And that's verified. I'm talking about reading your brief. Okay. Yes, she had employees. But she was hiring those employees for Amazon. And she didn't control the hiring and the managing, the supervising, the firing of those employees. And so basically what Amazon was doing was using Ms. Amos and the LLC that it caused her to create and made her create as a pass-through. And so that context is important to understanding this relationship. And going back to – and as far as the number of trucks, I don't believe that's in the record. Amazon even controlled the number of trucks. She would get surprise deliveries of trucks. She wasn't controlling that, Your Honor. With respect to New Prem v. Oliviera, that's a good case for it. It's not in the record. I just asked you how many trucks you had. I honestly don't know the answer. Well, I'm surprised you don't know the answer. 250 drivers. I mean, as far as the number of trucks, it varied over time. What is in the record is that Ms. Amos did not get to control the number of trucks that she would have. It was Amazon that was controlling that. Just like Amazon was controlling. Amazon wanted these packages delivered. Yes. All the time. Yes, Your Honor. And that's what the company here, your client, was obliged to do. Yes, Your Honor. As part of a DSP program where Amazon was setting this up all across the United States as a system, we urged to violate the FLSA. And so then New Prem v. Oliviera is actually a good case for us because there you see the same sort of structuring, the same sort of interposition of a business entity between the defendant company and the individual. And what we're urging in this case is that Ms. Amos is the individual who is protected. You're saying she's a transportation worker under the statutes. That's the basis of your claim. Yes, Your Honor. Disregard the business situation. Disregard the fact that there are 450 employees and several hundred trucks and six-acre operation and thousands and thousands of packages have been delivered every day and she owns it. Well, that's not just for sure. She's a big business. She operates a big business in the Durham area, a major business. Well, keep in mind that there were other DSPs operating in the Durham area. She wasn't the Durham operation. She was one of many, one of several. And with regard to Ms. Amos, she's the individual that is protected by those. We've brought the LLC into the case because of the rules of pleading allow us to bring a case with both plaintiffs. We could have not done that. Or we could have brought two separate cases. Well, one of the rules of civil procedure says that's a silly thing to do, that the formalities of doing that are unnecessary to the extent that the LLC is a problem in this case. There's a solution. Besides any sort of equitable solutions or any saying that, well, if Ms. Amos isn't bound, then she couldn't bind the company, the other solution is under Rule 21. The LLC can be severed sua sponte from the case. It can be dropped as a party from the case. But whether the LLC is in the case or not, right, you have to show it's not just, you have to show that the contract is a contract of employment, right? And the contract, as I understand it, is between the LLC and Amazon, and it just looks in substance like it's a commercial contract between two commercial entities. So I'm not sure it really matters who the parties to the case are. You still have to work with this contract. Yes, of course, but then you're looking also, should be looking, if not at the FLSA, at the common law of who's an employee. And you're looking at the agreement that we believe that we've made a showing through actual facts in the record that Ms. Amos was the employee. And so your position is that this contract, which says sort of how much what it is that the LLC has to do for Amazon in exchange for what it will get from Amazon, is actually an employment contract between Amazon and Ms. Amos. Yes, sure. Does it say anything about like how much, what are the parts of the contract that make it seem like an employment contract to you? Yes, Your Honor. First, it calls Amos you. She's the one who's bonding her company. Does it say stuff like, you know, here's how many vacation days you'll get? Like the kinds of things you usually see in an employment contract? No, but then it incorporates the program policies, and those program policies control every single aspect of what she's doing. And additionally, the amount of control that Amazon actually portrayed or actually had over Amos, that has to be looked at from the standpoint of a common law. Otherwise, if we simply just look at the four corners of it, it's misleading. There's a case, it's a district court case, but it deals with similar facts. It's Canales v. LaPage Bakeries out of, I believe, the District of Massachusetts. And in that case, you have a similar example of a distributor agreement entered into between a defendant company and a business entity that was interposed. And yet, that did not prevent the owner-operators from saying that that distributor agreement is a contract of employment for purposes of new crime. The distributor agreement didn't prevent them from performing services. And in fact, even Amazon intended that the individual be directly tied to it. In the record, there is talk about the change to the ownership where there couldn't be additional owners. And that was, in Amazon's words, to paraphrase, to keep the individual as being involved in the business. Amazon intended the individual to be the one doing the work. That's very clear from the design. And to the extent that the court only looks at the four corners, it's getting a misleading picture. Thank you. Thank you. Breaux? May it please the Court, Diana Breaux for Appellee Amazon Logistics. plaintiffs asked this court to be the first to find that a business entity can avoid a contractual commitment to arbitrate under statutory exceptions limited to individual human workers. A few issues on this appeal. Is there a valid agreement to arbitrate? And whether that agreement to arbitrate in the contract that Kirk Amos Delivery and Courier LLC executed with Amazon to provide delivery services to Amazon through its personnel, whether that arbitration commitment can be avoided under both the FAA and the Washington Uniform Arbitration Act? Well, I gather if it is arbitrable under the FAA or subject to the FAA, that ends the matter because the Washington statute could not withdraw arbitration once the FAA granted it. And so it seems to me the focus should be on the federal statute. If the federal statute doesn't apply, then we would still have to address the Washington state statute. Correct. And both statutes here. Don't have to talk about the state of Washington. I think I agree with Judge Niemeyer. I don't understand what they've got to do with it. Well, state law provides an independent basis for enforcing. We need an independent basis since the FAA applies. Exactly. And so I would like to focus my argument on the FAA. So Section 1 of the Federal Arbitration Act contains a narrow exemption. The inquiry under Section 1 begins and ends with the contract. The statute directs that the Section 1 exemption applies to contracts of employment, of seamen, transportation, excuse me, railroad employees, or any other class of workers engaged in foreign or interstate commerce. There are two important aspects of this exemption. One, it applies to contracts of employment as a threshold issue. Second, of certain types of transportation workers. In Circuit City, the Supreme Court instructed that this statutory exemption is to be construed narrowly and that the residual clause, the any other class of workers, must be construed consistent with the examples, the named examples that precede it. Seamen and railroad employees. Both of the named types of transportation workers are natural persons. That is, in fact, the through line from the statutory text to the Supreme Court precedent is that this exemption is directed to contracts of employment. And in New Prime, the court grappled with, what is a contract of employment? And the Supreme Court looked at contemporaneous definitions of employment. But not one of the opinion provides those definitions and they're directed to the services of an individual human worker. Is your position, and I took it to be this way from your brief, is what you're saying that an incorporated entity can never have an employment of contract? I think for purposes of the Section 1 exemption, that bright line rule, and it's been adopted by lower courts below, I think particularly instructive is the Western District of Pennsylvania decision. And how do, I mean, in New Prime, that was a corporation. And I understand that nobody was arguing that in front of the Supreme Court, but it would be kind of a huge mistake for the Supreme Court to have made. I thought the whole point of New Prime was we don't get hung up on the formalities. We look at the substance of the agreement. So in New Prime, the parties agreed that Mr. Oliveira was an individual worker  Right, so if all of that is true, does it, but I understand your position to be that even if all of that is true, look, if the entity is incorporated, it's not an employment contract for purposes of this exemption. This was actually the subject of oral arguments. If you could just, I am just, is that your position? That even if the facts are as they were in New Prime, as long as you are incorporated, you do not have a contract of employment for purposes of this exemption? Yes, Amazon's position is that that bright line rule is consistent with the statutory text. The Supreme Court, since Congress and the Supreme Court have said that this is a narrow exception that applies to individual workers. In Circuit City, the Supreme Court also observed that arbitration is not a bad outcome. There's nothing per se wrong with arbitration. And in construing a narrow exemption, a bright line rule that would avoid many trials and protracted litigation over whether the exemption applies. So we think that the bright line rule makes sense. So, just a couple of important facts here. It's undisputed that... I guess, I'm sorry, I do have a follow-up question. Just assuming hypothetically I didn't agree with that, do you have a fallback argument? I think the fallback argument is actually contemplated by the RNC oil field case where the court, and actually at oral argument and new crime, there was some very instructive colloquy on this very issue. And the Mr. Olivares' counsel argued that in most cases, you stop at the identity of the business entity. You're going to know whether this is a business or an individual, whether this is a business contract or a contract of employment. In the ordinary case, it's not going to be a complicated inquiry. And that is why a bright line works. What RNC oil field says is if there's a question of fact or if there's a disputed issue about whether this contract that is in form or a business contract... Yeah, like in new crime. Like in new crime. Yes. If, in fact, this contract is directed to a company engaging the services of an individual human worker, then that contract might be both a business contract and a contract of employment, depending on the terms. Yeah, like what the Supreme Court said in new crime. Pardon? Like what the Supreme Court said in new crime. Well, what the Supreme Court held in new crime as contract of employment is defined by reference to contemporaneous sources and directed to the engagement of an individual person's services. So I think there's also some helpful guidance from the Fifth Circuit and the Supreme Court on the narrowness of this exemption. Why are you spending so much effort on that? It seems to me I thought your argument basically was set aside new crime because in the First Circuit, the parties agreed that he was a worker, that the LLC was just they read through it because he owned the rig and there was nobody else, no other employees, anything else. But in this case, we have a business entity that is capitalized, that hired 450 employees, that had trucks, provided delivery services, as opposed to being a worker. And it's a business contract. It seems to me that's your argument, isn't it? That is most certainly our argument on these facts. I mean, categorically, the question might be can a corporation, an incorporated corporation, ever be an employee? I've heard of incorporations being agents of other corporations. Whether they can be employees might be a dicey question. I don't think that was answered in prime. It was an LLC, which is a business entity that gives limited liability. But that was never the facts there didn't present a heavy issue. I mean, he was an individual and he was the only individual. He was the worker and the First Circuit agreed on that and the Supreme Court didn't challenge that or didn't take that up. But in this case, if it was that same situation, I think we would have some difficulty, wouldn't we? If Ms. Amos was the only delivery person and she formed an LLC and did the deliveries herself under all kinds of control, she might be able to argue I'm a worker. Well, certainly that would be a very different case than we have here. In this particular case, the contract between Kirk Amos Delivery and Courier Services, LLC, and Amazon had no specific provisions directed to personal services by Ms. Amos. She herself, in describing what she did for her company, describes that she did HR functions, administration, hired and supervised employees. Those functions under this contract could have been performed by any of her 450 employees. So starting first with the contract, there's no term in this contract that can be construed as a contract of employment of Ms. Amos. And then, of course, we have the facts of this case, which are that, in fact, the company had 450 of its own employees. And there's certainly no implication here that the company wasn't a real company. In fact, plaintiffs have put into the record that Ms. Amos apparently received an offer of $1 million to sell this company. So I think that in the hypothetical, a single worker is so far removed from the facts here. And I do think that that would be an extraordinary exception to the norm and no reason to deviate from a bright line rule. Is this LLC a term under North Carolina law or Washington law?  Amazon required her to form the corporation. And she formed this, whatever it's called here, Kirk Famous Delivery and Courier LLC. Was that formed under North Carolina law or Washington law? What's LLC mean under one of those laws? What's LLC mean then? It's under North Carolina law. What's LLC mean? Well, it's a limited liability company. That's what I thought. But it's treated the same under North Carolina law as any other business corporation. For the most part, I think. I don't think that it can be reasonably disputed. No, it's not disputed. I just want to find out. I'm trying to find out the facts still. I'm still trying to find out how many trucks they got. Well, I certainly wish I could answer your curiosity on that. No, it's not curiosity. I'm interested in it. You're saying that's the reason she can't be an employee is that this is an LLC. It's a big business down there. Yes, that's relevant to the section. I understand that. And that makes all the sense in the world, as Judge Niemeyer has talked about. It's distinguishable from that case that you were talking about. On that point, they say, well, she's a transportation worker. She drives the trucks herself. She's simply a delivery person. Well, they didn't tell us that there were 250 delivery persons that she had working for. She actually says they're not working for her. They're working for Amazon directly. That's not what the contract says. But anyway. I guess just to sort of follow up on this, I do understand why your client, Amazon, would benefit from a bright-line rule that any contract between two corporate entities, an LLC, any other form of corporation in Amazon, is per se excluded. It cannot be a contract of employment for purposes of this exemption. But would you agree that we do not have to adopt that rule to decide this case? Absolutely not. I'm sorry, you do not agree. You think we have to adopt that rule to decide this case. Sorry, I asked you like a triple negative question. Sorry, I was not following them all. I might still be on specific time. So, in this case, this is not a close case. This case can be decided. I suggest you say, I agree with you. I agree with you. I will accept that invitation. To the point of this being a company, I don't think that this is, it can be reasonably disputed that Plainus had no benefits from the corporate form. A company that has 450 employees and has leased fleets, barely benefits from the protections afforded business entities. Who owned the trucks? In this particular case, I'm not sure if the facts are on the record, but the trucks were leased. Leased from who? They were leased from third-party companies. Was the third-party company owned by Amazon? No. Okay. I mean, that's not... But it was leased by the plaintiff here, Kirk Amos Delivery and Courier? Yes. They're the... And it's in the record, and plaintiffs admit. I understand. Ms. Amos admits a part of the functions that she executed as the business owner were directed towards leasing and managing the fleet. But we don't know how many trucks there were. That's not in the record. I have not discovered that fact within the past two minutes. Well, you got 450 people driving them, though. Indeed. That we agree on. They drive them 24 hours a day. So, they need three trips, maybe. So, I want to touch briefly on a point. There's been... There was questioning of plaintiffs on the relevance of the FLSA. And I just think it's important to note that that statute has no relevance to the Section 1 inquiry. And I think plaintiff's argument about its application here highlights just why. The test is not applied to businesses. And plaintiff's theory of the case is that Amazon exercised sufficient control over the business and its owner to make a company and its owner employees. And, again, the relevant inquiry with respect to Section 1 is directed to the contract and whether or not a company meets the economic realities test of control is not relevant to the Section 1 inquiry and, frankly, rather nonsensical. Businesses aren't entitled to the statutory protections of the remedial FLSA, which is directed toward fair wages. Well, to be fair, I think the argument, according to the plaintiff, is parallel because Amos is arguing that she's exempt from the FAA because she's an employee or a worker. And this is a worker's contract. And she claims that she's entitled to FSLA remedy because she's an employee. And so, in the sense that there's some parallelism there. But, obviously, we have to focus on the language of the FAA and determine whether this is an employment contract or delivery services, commercial delivery services contract. So. Is that it? In sum, because the FAA enforces a valid agreement to arbitrate the binds of parties here, the court should affirm the district court. Thank you for your time. All right. Thank you, Ms. Breaux. Mr. Rigsby? Yes. And if I may, I believe the starting point is I need to clarify some of the factual issues that have been raised. The first issue is the number of trucks. While it's not in the record, I'm informed that she actually owned two trucks during the entire time. Again, not in the record, but just for your information. How many did she lease? I actually don't know the answer to that because it changed over time. She needed to provide her employees with trucks, right? Yes, of course. All right. So it's sort of whether you lease an automobile or you buy it isn't the issue. It's a question of how many they had. And she was supervising 450 employees and trucks and land and warehouse and distribution center and all the employee relations and benefits. That was all part of her business. And with respect, I believe that's an inaccurate statement. It's an inaccurate? Inaccurate statement. Well, they weren't delivering to everybody around Durham? Yes, of course. They were, weren't they, for Amazon? Yes. And we see them out there on the highways. We drive highways, and we live and have homes, some of us, and they drive up and deliver things. And it said they had 450 employees, and we see these Amazon trucks. And they said Amazon on the side of them or Prime or something. And they got 450 employees, and nobody knows how many trucks they got, how many trucks they need. We know that Durham itself has a population of nearly 300,000 people. That's a big area, and they delivered for outside Durham, right? Beyond Durham. As far as the number of employees, again. I don't know why you all are contesting or trying to conceal the facts from us. We're not trying to conceal the facts. We're trying to clarify the facts. Give us a straight answer. Okay. You said they owned two trucks. She says they leased the trucks. How many trucks did they lease, 250? No, Your Honor, I don't believe that. As far as the leasing, that was through a company that Amazon put forward, and they had to lease it through that company, according to the record. Well, that's fine. That's all right. That's what I ask about. How many trucks are they using? Nobody knows. As if it's – we're not supposed to know what the facts are in this case. And you can think, well, they're not relevant. Well, they must have been relevant because I ask about it. And I'm sitting up here as your judge. Yes, Your Honor. Relevant to me. Well, unfortunately, that fact is not in the record. All right. Well, as far as, if I may argue, as far as the 450 employees, again, we're on a – Is that in the record? Yes. You said it's in your complaint. It is. All right. 450 truck drivers are, for the most part, they're truck drivers. And if you've got 450 truck drivers, you've got to have a large number, substantial number of trucks. But here's what I would say. If they run all over the roads in an area of 300,000 or a half million in north, central North Carolina, there's a lot of trucks. And so what I would say to that is that that's over the period. And that's a big business. It wasn't a big business, Your Honor. Okay. And that was 450 employees under the entire two-year time. Again, because it's almost a summary judgment type procedural posture under Berkeley County School District, I mean, the inference is that that was with high turnover. It wasn't 450 employees at any one given time. And so the number of trucks, it really wasn't put into the record because, again, we're not looking at the trucks, we're looking at – So you don't accept the 450 number? I don't accept the 450 – Well, but you said it was in your complaint. Your Honor, what I don't accept is that 450 employees at any one given time. I don't believe that that – I mean, that's right. 450 over what time period? Over about a one-and-a-half-year time period of when she was actually operating. What was the highest number that you had at any one time? Your Honor, I don't – You don't know. Because – You're not entitled to know. Okay. Our argument is that Amazon controlled those employees directly. Amazon was using the LLC as a pass-through entity so that it could control those employees directly, so it could control Amos directly. It had almost an Orwellian level of control over the employees and Ms. Amos. And so to the extent that it was – Amazon was the one who was driving – who was determining the number of trucks at any one given time. So it wasn't that Ms. Amos was independently deciding these things. They were showing up, and she was forced to lease them as part of this model that Amazon was – She owned the business. Well, Your Honor, we say that it was really employment and because of the level of control. And so obviously if you don't accept those facts, if you don't accept that there's control, if you don't accept employment, then at that point, then – Is it true that she had an offer to sell for $1 million? Yes, and we also know that Amazon – Let me ask you. I need to follow up on that. So what business – if she's just an employee, what business was she selling for one – would she be selling for $1 million? So that would be the relationship with Amazon. And, of course, Amazon wouldn't let her do that. Amazon – I'm not asking you that. I'm talking about the nature, the fact that business was a business entity that could be evaluated on that basis. In other words, she wasn't offering herself as an employee or a worker for sale for $1 million. The offer made to her was to buy the business. And so that was through a letter of intent, not a firm offer, but I get the point. I just wanted to clarify. I don't – That's irrelevant to my question, isn't it? Yes, sir. Okay. Okay. But to the extent that we're looking at it, you know, maybe it could be valued as a business. Amazon wouldn't let her do that. Amazon treated her as an employee. And so even though there was the attempt to go that route, it didn't work. And so in the end, Amazon treated her as an employee all the way through. The facts about control are in the record. They're verified, JA-135. Again, the amount of control that Amazon had over Amos and her co-employees that she managed was to the level of employment. We would have the anomalous situation. You know, Amazon – let's concede. Amazon had a lot of control. They have a reputation. They have a logo. They have – they're interacting through this business with the public. But every time you say that, you sort of seem to imply that she did not run a business. But she did all the HR. She paid them. She paid them on a basis. She hired them. She directed where they're going and managed the company. And it was a delivery service she was providing for Amazon under, to be sure, a lot of restrictions that Amazon imposed. But there's a lot of difference between a commercial delivery business under those circumstances and an employee, as referred to in Section 1 of the FAA, an employment contract, is what that refers to as the exception. May I respond very briefly? Please. Please do. So the answer to that is that we're still looking at whether she's an employee of Amazon. If she's an employee of Amazon, she's a worker performing work. Is she doing work for Amazon? Is she doing services for Amazon? That's all that new prime asks through a contract of employment. Yes, that's the program agreement. So respectfully, that's our answer to that. All right. Thank you, Mr. Rees. Thank you. We'll come down and greet counsel and then proceed. This is sort of new. I think the last term of court, we came down and greeted. During the pandemic, we regretted how we weren't able to do that. But as far as I know, we're the only court in the country comes down and we hug and kiss you and go on to the next case.
judges: Paul V. Niemeyer, Robert B. King, Pamela A. Harris